**CASE NO. 10-4076**

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

**UNITED STATES,**
Plaintiff-Appellee,

v.

**BERNARD K. WATKINS,**
Defendant-Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

**BRIEF OF APPELLANT
BERNARD K. WATKINS**

---

WENDI L. OVERMYER
Attorney at Law
Office of the Federal Public Defender
50 S. Main Street, Suite 700
Akron, Ohio 44308
Phone:  (330) 375-5739
Facsimile: (330) 375-5738
Email: wendi_overmyer@fd.org

Counsel for Appellant Watkins

# **TABLE OF CONTENTS**

**Page No.**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  x

Statement of Subject Matter and Appellate Jurisdiction . . . . . . . . . . . . . . . . .  1

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

       A.    The payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

       B.    Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

       C.    Sentencing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Assignment of Error No. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

       The direct court erred by failing to include all elements of the charges
       in the jury instructions and compounded the error by allowing law
       testimony misstating the law and allowing the prosecutor to repeat the
       incorrect legal standard in closing argument.

       A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

       B.    Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## **TABLE OF CONTENTS (Continued)**

**Page No.**

    1.    The district court's failure to give the correct jury
instruction deprived Mr. Watkins of a fair trial . . . . . . . . . .  15

    2.    The district court compounded its error by allowing FBI
agents to give incorrect legal conclusions . . . . . . . . . . . . . .  18

    3.    The government misstated the applicable law during closing
argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

    4.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Assignment of Error No. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

There was insufficient evidence presented at trial to prove
the charges

A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

B.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

    1.    The government failed to provide sufficient evidence of
extortion under color of official right . . . . . . . . . . . . . . . .  25

        (a)    The money did not travel to interstate commerce . . .  26

        (b)    The evidence failed to establish the public official
understood the transaction was in return for
official acts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

    2.    The government failed to provide sufficient evidence of
bribery in a federally funded program . . . . . . . . . . . . . . . .  30

C.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

ii

# **TABLE OF CONTENTS (Continued)**

**Page No.**

Assignment of Error No. III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

      Mr. Watkins was deprived of his Sixth Amendment right to a trial
      before a jury representing a fair cross-section of the community

      A.      Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

      B.      Applicable Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Assignment of Error No. IV  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

      The district court improperly calculated the advisory guideline range
      by applying a two-level enhancement for obstruction of justice
      pursuant to U.S.S.G. § 3C1.1, and four level enhancement for high-
      level position pursuant to U.S.S.G.  § 2C1.1(b)(3), resulting in a
      procedurally and substantially unreasonable sentence

      A.      Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  40

      B.      Applicable Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

            1.      Mr. Watkins did not obstruct justice  . . . . . . . . . . . . . . . . . .  41

            2.      Mr. Watkins did not hold a high-level position  . . . . . . . . . .  46

Assignment of Error No. V  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

      The district court imposed a procedurally and substantively
      unreasonable sentence that is not justified in light of 18 U.S.C. §
      3553(a) sentencing factors

      A.      Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  50

      B.      Applicable Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

## <u>TABLE OF CONTENTS (Continued)</u>

<u>Page No.</u>

1.    The district court created unwarranted sentencing disparity
      between similarly situated defendants . . . . . . . . . . . . . . . . . . . . . .    51

2.    The district court improperly relied upon unproven allegations
      of "relevant conduct" and erroneously concluded Mr. Watkins
      exhibited a history and propensity for this offense . . . . . . . . . . .    54

3.    The district court erroneously varied upward based upon alleged
      perjury when such alleged perjury was already used to enhance
      Mr. Watkins' advisory guideline range by two offense levels . . .    57

4.    The sentence imposed does not reflect the seriousness of the
      offense and promotes disrespect for the law . . . . . . . . . . . . . . . .    57

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    58

Certificate of Service & Conformity . . . . . . . . . . . . . . . . . . . . . . . . .    60

Addendum of Relevant Documents in Record . . . . . . . . . . . . . . . . . . .    61

iv

# TABLE OF AUTHORITIES

## CASE AUTHORITY                                           Page No.

Arizona v. Fulminante, 499 U.S. 279 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Duran v. Missouri, 439 U.S. 357 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 39

Echlin v. LeCureaux, 995 F.2d 1344 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 36

Evans v. United States, 504 U.S. 225 (1992) . . . . . . . . . . . . . . . . . . . . .  12, 14, 17

Gall v. United States, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 40, 50, 57

Holland v. Illinois, 493 U.S. 474 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Lockhart v. McCree, 476 U.S. 162 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Slayton v. Ohio Dept. Of Youth Services, 206 F.3d 669 (6th Cir. 2000) . . . . .  18

Smith v. Berghuis, 543 F.3d 326 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 35, 36

Taylor v. Louisiana, 419 U.S. 522 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 39

Torres v. County of Oakland, 758 F.2d 147 (6th Cir. 1985) . . . . . . . . . . . .  15, 19

United States v. Abbey, 560 F.3d 513 (6th Cir. 2009) . . . . . . . . . . . . . . . . . passim

United States v. Bolds, 511 F.3d 568 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 50

United States v. Boring, 557 F.3d 707 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . 43

United States v. Brock, 295 Fed. Appx. 792 (6th Cir. 2008) . . . . . . . . . . . . . . . . 21

United States v. Bullock, 526 F.3d 312 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF AUTHORITIES - Continued

<u>CASE AUTHORITY</u>                                      <u>Page No.</u>

United States v. Canepa,, No. 1:10CR00348 (N.D. Ohio, Filed Aug. 19, 2010) . 52

United States v. Chance, 306 F.3d 356 (6th Cir. 2002) . . . . . . . . . . . . . . . . . 45, 49

United States v. Cobleigh, 75 F.3d 242 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . 24

United States v. Collins, 78 F.3d 1021 (6th Cir. 1996) . . . . . . . . . . . . . . . . 15, 17

United States v. Comer, 93 F.3d 1271 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 43

United States v. Conaster, 514 F.3d 508 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . 51

United States v. DiCarlantonio, 870 F.2d 1058 (6th Cir. 1989) . . . . . . . . . . . . . 26

United States v. Dunnigan, 507 U.S. 87 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 42, 57

United States v. Fantroy, 146 Fed. Appx. 808 (6th Cir. 2005) . . . . . . . . . . . . . . 34

United States v. Goff, 2010 WL 3736261 (6th Cir. Sept. 17, 2010) . . . . . . . . . . 41

United States v. Gunter, 551 F.3d 472 (6th Cir. 2009) . . . . . . . . . . . . . . . . 14, 17

United States v. Henderson, 307 Fed.Appx. 970 (6th Cir. 2009) . . . . . . . . . . . 17

United States v. Hunt, 487 F.3d 347 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . 56

United States v. Jenkins, 593 F.3d 480 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . 14

United States v. Krause et al, No. 1:10CR00235
    (N.D. Ohio, filed May 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53

United States v. Mack, 159 F.3d 208 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 49

United States v. McIntosh, 983 F.2d 1070 (6th Cir. 1992) . . . . . . . . . . . . . . 47, 49

## TABLE OF AUTHORITIES - Continued

**CASE AUTHORITY**                                              **Page No.**

United States v. Mills, 140 F.3d 630 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Mise, 240 F.3d 527 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 45

United States v. Odeneal, 517 F.3d 406 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . 33

United States v. Ostrander, 411 F.3d 684 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . 26

United States v. Ovalle, 136 F.3d 1092 (6th Cir. 1998) . . . . . . . . . . . . . . . . 34, 37

United States v. Paulette, 457 F.3d 601 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . 46

United States v. Peete, 919 F.2d 1168 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 26

United States v. Ruiz, 2010 WL 4721146 (6th Cir. Nov. 15, 2010) . . . . . . . . . . . 50

United States v. Sassanelli, 118 F.3d 495 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . 45

United States v. Sliwo, 620 F.3d 630 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Spears, 49 F.3d 1136 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . 42, 46

United States v. Stout, 599 F.3d 549 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 56

United States v. Vonner, 516 F.3d 382 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . 40

United States v. Wallace, 597 F.3d 794 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 53

United States v. Williams, 952 F.2d 1504 (6th Cir. 1991) . . . . . . . . . . . . . . . . . 18

**UNITED STATES CONSTITUTION**

Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

vii

## <u>TABLE OF AUTHORITIES - Continued</u>

<u>CASE AUTHORITY</u>                                          <u>Page No.</u>

### <u>FEDERAL GUIDELINES</u>

U.S.S.G. § 2C1.1(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

U.S.S.G. § 3C1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

### <u>FEDERAL STATUTES</u>

18 U.S.C. § 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 18, 25, 30

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 18, 26

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. § 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

### <u>FEDERAL RULES</u>

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Federal Rule of Appellate Procedure 34(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Sixth Circuit Rule 34(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

## <u>TABLE OF AUTHORITIES - Continued</u>

<u>CASE AUTHORITY</u>                                                          <u>Page No.</u>

<u>OTHER</u>

<u>Jury Selection Plan</u>, F-1, H-1, p. 9 (N.D. Ohio adopted January 12, 2010)
        available online at *http://www.ohnd.uscourts.gov/assets/Jury_Service/*
        *JurorSelectionPlan.pdf.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 39

<u>Jury Selection Plan</u> (S.D. Ohio, filed Jan. 12, 2010 ), available online at
        *http://www.ohsd.uscourts.gov/jurorinfo/*
        *Juror%20Selection%20Plan.pdf* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

<u>Jury Selection Plan</u> (E.D. Mich., approved Dec. 5, 2000) available online at
        *http://www.mied.uscourts.gov/Rules/Plans/00-AO-083.pdf* . . . . . . . . . . 37

<u>Jury Notice of Selection</u> (M.D. Tenn. 2010), available online at
        *http://www.tnmd.uscourts.gov/notice_selection* . . . . . . . . . . . . . . . . . . . 37

U.S. Census Bureau, 2009 State & County QuickFacts, available online at
        *http:/quickfacts.census.gov/qfd/index.html* . . . . . . . . . . . . . . . . . . . . . 35, 38

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Sixth Circuit Rule 34(a), Appellant Bernard K. Watkins requests oral argument. This case appeals a jury trial involving detailed testimony and Mr. Watkins believes oral argument will assist the Court in the decisional process. This appeal raises questions about Hobbs Act jury instructions – for which this Court does not have a pattern instruction – and Mr. Watkins believes oral argument will assist the Court in deciding this issue. Mr. Watkins also challenges his sentence, including multiple guideline enhancements, and believes oral argument will allow the parties to provide complete and detailed information of benefit to this Court's decisional process.

## **STATEMENT OF SUBJECT MATTER**
## **AND APPELLATE JURISDICTION**

The district court had subject-matter jurisdiction over the federal criminal charges.  18 U.S.C. § 3231. The district court entered final judgment on August 31, 2010. [R. 71, Judgment].  Appellant Bernard K. Watkins filed a timely notice of appeal on September 1, 2010.  [R. 73, Notice of Appeal].   This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and authority to examine the sentence pursuant to 18 U.S.C. § 3742(a).

1

## <u>ISSUES PRESENTED FOR REVIEW</u>

I.      Whether the district court erred by failing to include all elements of the charges in the jury instructions and compounded the error by allowing lay testimony misstating the law and allowing the prosecutor to repeat the incorrect legal standard in closing argument.

II.     Whether there was insufficient evidence presented at trial to prove the charges.

III.    Whether Mr. Watkins was deprived of his Sixth Amendment right to a trial before a jury representing a fair cross-section of the community.

IV.     Whether the district court improperly calculated the advisory guideline range by applying a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and a four-level enhancement for high-level position pursuant to U.S.S.G. § 2C1.1(b)(3), resulting in a procedurally and substantively unreasonable sentence.

V.      Whether the six-year sentence imposed by the district court was procedurally and substantively unreasonable in light of 18 U.S.C. § 3553(a) sentencing factors.

## STATEMENT OF THE CASE

Appellant Bernard K. Watkins appeals his conviction and above-guidelines sentence of 72-months imprisonment, imposed after a jury found him guilty of receiving $7,000 in violation of 18 U.S.C. § 666 and § 1951.

The superseding indictment filed against Mr. Watkins alleged two counts of extortion under color of official right, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Counts 1 and 3), and two counts of bribery in a federally funded program, in violation of 18 U.S.C. § 666(a)(1)(B) (Counts 2 & 4). [R. 19, Superseding Indictment]. After a three-day jury trial, the district court dismissed Count 4. [R. 94, Trial Tr., pp. 480-484]. The jury returned a verdict of guilty on Counts 1, 2 and 3. [R. 51, Jury Verdict].

At sentencing, over Mr. Watkins' objection, the district court applied enhancements for obstruction of justice (U.S.S.G. § 3C1.1), and high-level position of authority (U.S.S.G. § 2C1.1(b)(3)). [R. 95, Sent Tr., pp. 26-28]. The district court imposed a sentence of 72-months imprisonment, constituting an upward variance of 21 months from the 41-51 month advisory guideline range, issuing a sentencing memorandum in support of its sentence. [R. 71, Judgment; R. 72, Sent. Memo.]. Mr. Watkins filed a timely notice of appeal. [R. 73, Notice of Appeal].

## STATEMENT OF THE FACTS

Appellant Bernard K. Watkins, an employee of the Cleveland Metropolitan School District ("CMSD") since 2002, was preparing to retire and hoped to do consulting work in the private sector. [R. 94, Trial Tr., p. 459]. This case resulted from a miscommunication between Mr. Watkins and Victoria Newsome, a contractor and business associate, who owned Vision Security Solutions ("VSS"). In June of 2008, VSS won a district-wide $182,000 security system maintenance contract. [R. 93, Trial Tr., p. 240]. There are no allegations that VSS should not have been awarded the June 2008 contract, nor are there allegations that VSS failed to adequately perform its duties under this contract. Mr. Watkins hoped to work for VSS upon his retirement, helping it grow its business in the Cleveland area. [R. 94, Trial Tr., p. 452, 459].

### A.    The payments

Ms. Newsome twice met with Mr. Watkins for lunch, paying him $5,000 and $2,000 respectively, the money being provided by the FBI. [R. 93, Trial Tr., p. 373-378]. The FBI videotaped these lunch meetings. The videotapes of these lunch meetings were admitted at trial and contain vague statements susceptible to multiple interpretations. The videotaped lunch meetings indicate Mr. Watkins never asked for any envelope or payments. [R. 93, Trial Tr., p. 302].

Mr. Watkins understood the money to be a retainer for future consulting work with Ms. Newsome's company, VSS. [R. 94, Trial Tr., pp. 452-453, 459, 467]. Since 2004, Ms. Newsome had been a contractor for CMSD and previously knew Mr. Watkins from when they both worked for Progressive Systems, a security contractor, in 2001. [R. 93, Trial Tr., pp. 239, 286, 412, 431]. Ms. Newsome had previously relied on Mr. Watkins' advice and business recommendations.  At the October 28, 2008 lunch meeting, they discussed Mr. Watkins' previous recommendation of someone for VSS to hire in the Cleveland area. [R. 93, Trial Tr., p. 300, 454].  Mr. Watkins had also provided a recommendation in 2007 for VSS to obtain a certification. [R. 94, Trial Tr., p. 455-456].  Ms. Newsome admitted talking about employing Mr. Watkins in the future at the December 18, 2008 meeting. [R. 93, Trial Tr., p. 309-310, 314]. Kim Watkins, Mr. Watkins' wife, testified that she and Mr. Watkins discussed possible employment with VSS. [R. 94, Trial Tr., p. 475].  To earn extra income, Mr. Watkins often took outside jobs, and his supervisor was fully aware of this supplemental work. [R. 93, Trial Tr., p. 333-335;  R. 94, Trial Tr., p. 451-452].

The government alleged the payments were for the ongoing facilitation of  the VSS contract. [R. 94, Trial Tr., p. 483].  Yet, Mr. Watkins did not handle fiscal matters. [R. 93, Trial Tr., p. 421].  Lester Fultz, the Chief of Safety and Security and Mr. Watkins' supervisor, testified that Mr. Watkins did not even oversee the contract

once it was awarded. [R. 93, Trial Tr., p. 338]. Mr. Watkins' signature was not required for invoices and Mr. Fultz testified invoices were paid after Mr. Watkins indicated the work was completed. [R. 93, Trial Tr., p. 332-333]. Mr. Fultz testified that any indication from Mr. Watkins that work had been completed was easily independently verifiable. [R. 93, Trial Tr., p. 339]. In fact, CMSD's fiscal officer, Nancy Pettit, issued invoice payments. [R. 93, Trial Tr., p. 421]. The contract was never actually delayed or hindered in any way. Ms. Newsome testified she was properly paid quarterly on the contract. [R. 93, Trial Tr., p. 251]. Ms. Newsome testified Mr. Watkins was her point-of-contact at CMSD, but she did not know "who the decision-maker was" under the contract. [R. 93, Trial Tr., p. 297].

Ms. Newsome claims four conversations took place prior to the October 28, 2008 lunch meeting, in which Mr. Watkins allegedly solicited a bribe. [R. 93, Trial Tr., pp. 316-317]. Mr. Watkins denies the content of the alleged conversations. [R. 93, Trial Tr., p. 406-407]. Ms. Newsome could not provide the dates for three of the alleged conversations, and none of the alleged conversations were recorded. [R. 93, Trial Tr., p. 246-247; 259, 303-305, 317, 356]. During her testimony, Ms. Newsome admitted Mr. Watkins never used the term "kickback" in any conversation. [R. 93, Trial Tr., p. 303].

On August 27, 2008, Ms. Newsome emailed her travel plans to Mr. Watkins regarding their 11:00 a.m. meeting the next day, and he sent the reply "Absolutely$." [R 93, Trial Tr., p. 255-256]. Mr. Watkins testified the dollar sign in this email was a typo. [R. 94, Trial Tr., p. 461]. Ms. Newsome forwarded this email to Mr. Fultz on the morning of August 28, 2008, stating she was concerned about "possible improprieties," but was unable to speak to Mr. Fultz until later that evening. [R. 93, Trial Tr., p. 257]. After receiving the email from Ms. Newsome, Mr. Fultz contacted the Cleveland Police Department for assistance in the investigation. [R. 93, Trial Tr., p. 325]. The FBI contacted Ms. Newsome a few weeks later, in mid to late September, and the videotaped lunch meetings were arranged. [R. 93, Trial Tr., p. 262, 372].

A month after the lunch meetings, FBI agents met with Mr. Watkins, showing him on videotape accepting money from Ms. Newsome. The agents told him it was illegal to accept any money from a contractor. [R. 93, Trial Tr., p. 348]. Not knowing the law, Mr. Watkins replied "I'm f***ed, you got me," and asked what he could do to help. [R. 93, Trial Tr., p. 348]. The FBI had been quite busy in Cuyahoga County investigating wide-spread corruption, but Mr. Watkins had no information that was helpful to the probe. [R. 93, Trial Tr., pp. 383-385].

**B.     Trial**

An Information was filed against Mr. Watkins on November 17, 2009, followed by a Superseding Indictment on February 2, 2010.  [R. 1, Information; R. 19, Superseding Indictment]. At trial, the entire venire was Caucasian.  Mr. Watkins, an African-American, objected and asked the district court to dismiss the venire and summon a new one. [R. 92, Trial Tr., p. 15].  The district court overruled the motion without a hearing. [R. 92, Trial Tr., p.15].

The only disagreement at trial was the reason for the payments.  Mr. Watkins has consistently denied accepting money to exert his official influence over the contract. After the agents and the prosecutor told the jury repeatedly it was illegal simply to receive any money from a state contractor, the jury convicted Mr. Watkins of extortion and bribery. [R. 93, Trial Tr., p. 348, 382; R. 94,  Trial Tr., p. 552; R. 51, Verdict]. The district court failed to tell the jury, as the defense requested, such crimes require a defendant knowingly accepted payment made in return for official acts.  [R. 93, Trial Tr., p. 351, 382-383; R. 94, Trial Tr., p. 505-506; R. 41, Proposed Jury Instructions, pp. 31-34].

**C.     Sentencing**

At sentencing, the Probation Officer recommended a downward variance "to promote respect for the law, and also recommended a downward variance based on the

8

history and characteristics of Mr. Watkins. [PSR at ¶ 75]. Mr. Watkins is the sole financial provider for this family and the sole caregiver for his elderly, incapacitated, father. [PSR at ¶ 75]. Mr. Watkins' sentencing memorandum set forth tragic family circumstances involving Mr. Watkins' children. [R. 63(under seal), Sent. Memo., p.3].

Mr. Watkins was punished severely for maintaining his innocence, while those truly involved in corruption received significantly lighter federal sentences. The district court, over Mr. Watkins' objection, applied an enhancement for obstruction of justice under U.S.S.G. § 3C1.1. [R. 95, Sent. Tr., p. 27-28]. Despite the district court's promise to "set forth in a sentencing memorandum specific portions of the transcript that I believe apply" to this enhancement, it did not do so. [R. 95, Sent. Tr., p. 27-28]. Instead, the district court referred only to Mr. Watkins' statement that the money was a for future work with VSS. [R. 72, Sent. Memo, pp. 3-4]. The district court then based a 21-month upward variance, in part, on Mr. Watkins' alleged perjury. [R. 72, Sent. Memo, pp. 7-8].

The district court, over Mr. Watkins' objection, applied a four-level enhancement applied on the alleged belief Mr. Watkins was a public official in a high-level decision-making or sensitive position pursuant to U.S.S.G. § 2C1.1(b)(3). [PSR, ¶ 23]. In doing so, the district court relied on Mr. Fultz's testimony to establish the finding Mr. Watkins' had a "substantial influence over the decision-making process

related to the award of these technical contracts." [R. 95, Sent. Tr., pp. 22-23; R. 72, Sent. Memo., pp. 4-5].

The applicable advisory guideline range of 41-51 months of imprisonment, was based on an offense level of 22 and criminal history category I. [R. 95, Sent Tr., p. 29]. The district court, *sua sponte*, varied upward 21 months, imposing a 72-month sentence of imprisonment, based in part, on general deterrence needs, citing "over 30 guilty pleas" for charges of bribery in Cuyahoga County. [R. 71, Judgment; R. 95, Sent. Tr., p. 58]. The district court extrapolated from the videotaped meetings that Mr. Watkins' demeanor proved an "ongoing relationship with ongoing kickbacks and ongoing bribery." [R. 95, Sent. Tr., pp. 11, 58-61; see also R. 72, Sent. Memo, p. 7]. The district court also speculated Mr. Watkins may not have put forth full cooperative efforts with the FBI to find other cases of corruption "because he was afraid he might implicate himself in other circumstances." [R. 95, Sent. Tr., p. 60].

The district court also based the upward variance on unproven allegations from 2003. The government offered allegations centering around James Gracey, a former representative for Progressive Systems, a past contractor to CMSD. The government alleged that on September 18, 2003, Mr. Watkins' asked for a payment in connection to a contract between Progressive Systems and CMSD. [R. 95, Sent. Tr., pp. 11-12]. The documents offered in support of this allegations consisted of a statement given by

Mr. Gracey to the FBI on January 11, 2010, and a copy of Mr. Gracey's alleged calendar from September 2003 with the word "Cleveland" written across September 18, 2003. [R. 65-1, Gov. Sent. Memo, pp 1-3].   The government did not call Mr. Gracey to testify at sentencing. Despite the tenuous nature of the allegations, the district court relied on the 2003 allegations as "relevant conduct" under § 3553(a), concluding Mr. Watkins engaged in a pattern of such conduct. [R. 95, Sent. Tr., pp. 19, 58-61].

Mr. Watkins now appeals his conviction and sentences.

## SUMMARY OF THE ARGUMENT

The district court did not instruct the jury it must find Mr. Watkins knew the payments were made in return for his official acts before reaching a guilty verdict for extortion under color of official right. See United States v. Abbey, 560 F.3d 513, 517 (6th Cir. 2009) (citing Evans v. United States, 504 U.S. 225, 268 (1992)).  Rather, two FBI agents told the jury it was illegal for Mr. Watkins to accept any money from a state contractor, a misstatement of the law the prosecutor repeated during closing.  Even if the jury believed everything Mr. Watkins said at trial, the jury would still have found him guilty because an essential element was missing from the instructions. The failure to correctly instruct the jury on an essential element of a crime constitutes reversible error.

The government failed to prove two essential elements required for Hobbs Act extortion under color of official right: jurisdiction, because money never traveled through interstate commerce; and proof the public official understood the transaction was in return for official acts.  The testimony of Ms. Newsome alone, without further corroboration of alleged conversations regarding solicitation of a bribe, is insufficient to establish bribery.  The miscommunication between Mr. Watkins and Ms. Newsome does not establish a criminal offense.

The entire venire panel lacked African-Americans and any other minorities, failing to represent a fair cross-section of the seven counties making up the Akron region of the Northern District of Ohio, depriving Mr. Watkins right to a jury under the Sixth Amendment.

Mr. Watkins was punished severely for testifying and presenting a defense at trial. By failing to make an adequate finding of perjury, the district court improperly applied a two-level enhancement for obstruction of justice. The district court exacerbated its error by unreasonably varying upward 21 months for this alleged perjury. Furthermore, the district court ignored testimony from Mr. Watkins' direct superior, Mr. Fultz, and improperly imposed a four-level enhancement for a high-level position, resulting in a procedurally and substantively unreasonable sentence.

The district court also failed to sufficiently justify the six-year sentence, by: (1) creating an unwarranted disparity between this case and similar cases; (2) improperly considering allegations from 2003 to erroneously conclude Mr. Watkins exhibited a history and propensity for this conduct; (3) improperly finding the two-level enhancement for perjury was insufficient to reflect the seriousness of such alleged perjury; and (4) imposing a sentence that fails to reflect the seriousness of the offense and that promotes disrespect for the law. Thus, the sentence imposed is procedurally and substantively unreasonable.

# ARGUMENT

## Assignment of Error No. I

**The district court erred by failing to include all elements of the charges in the jury instructions and compounded the error by allowing lay testimony misstating the law and allowing the prosecutor to repeat the incorrect legal standard in closing argument.**

### A.    Standard of Review

A dispute regarding jury instructions is a question of law reviewed de novo. United States v. Gunter, 551 F.3d 472, 484 (6th Cir. 2009) (citation omitted).  A district court's evidentiary rulings are reviewed for an abuse of discretion. United States v. Jenkins, 593 F.3d 480, 484 (6th Cir. 2010) (citation omitted).

### B.    Legal Argument

The jury did not know it had to first find Mr. Watkins knew the payments were made in return for his official acts before reaching a guilty verdict for extortion under color of official right. See United States v. Abbey, 560 F.3d 513, 517 (6th Cir. 2009) (citing Evans v. United States, 504 U.S. 225, 268 (1992)).  Instead, the district court instructed the jury it is enough "the defendant obtained a payment to which he had no right." [R. 94 Trial Tr., pp. 515-516].  The district court's failure to correctly instruct the jury on an essential element of a crime constitutes reversible error. Gunter, 551 F.3d at 484.

14

Two FBI agents also erroneously told the jury it was illegal for Mr. Watkins to accept any money from a state contractor. [R. 93, Trial Tr., pp. 348, 382-383]. Allowing the agents to misstate the law, "invades the province of the court to determine the applicable law and to instruct the jury as to that law." Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir. 1985). The government compounded the error by repeating the misstatement of law in closing argument, telling the jury "receiving and accepting a thing of value in [Mr. Watkins'] position is enough to violate the law." [R. 94, Trial Tr., p. 552]. This Court has long held the defendant must have known the payment was made in return for official acts in all Hobbs Act extortion prosecutions. Abbey, 560 F.3d at 517 (citing United States v. Collins, 78 F.3d 1021, 1035 (6th Cir. 1996)). Because the jury did not find an essential element of the crime, the jury's verdict cannot stand.

1.    **The district court's failure to give the correct jury instruction deprived Mr. Watkins of a fair trial.**

Even if the jury believed everything Mr. Watkins said at trial, it still would have returned a guilty verdict because an essential element was missing from the instructions. The missing element was the central contested issue at trial – the reason why Mr. Watkins accepted the money.

Mr. Watkins objected to the proposed definition of "under color of official right," requesting inclusion of the following sentence:

> The government must prove beyond a reasonable doubt, however, that the defendant obtained the payment to which he was not entitled knowing that the payment was made in return for official acts.

[R. 94, Trial Tr., p. 499 (citing Abbey, 560 F.3d at 517); R. 41, Proposed Jury Instructions, pp. 31-34]. The district court overruled the objection, stating it disagreed with "the defendant's reading of Abbey, and how it would relate to the jury instructions." [R. 94, Trial Tr., p. 503].

The district court erroneously instructed the jury on the definition of "under color of official right:"

> The term 'under color of official right' means the use by a public official or employee of the power and authority of the office he occupies in order to obtain money, property, or something of value from another to which that government official or employee, or that government office, has no official right. It is not necessary for the government to prove that the public official or employee made any specific threat or used force or fear to cause a person to part with the property that the indictment alleges was obtained by the public official or that the – or that the employee – excuse me, or that employee or government office. **The government must prove beyond a reasonable doubt, however, that the defendant obtained a payment to which he had no right.**

[R. 94, Trial Tr., pp. 515-516 (emphasis added)]. The last sentence of this instruction is erroneous and fails to instruct that the government must prove Mr. Watkins obtained a payment to which he was not entitled knowing that the payment was made in return for official acts. [R. 94, Trial Tr., p. 499]. The extortion instruction, when read in its entirety, failed to substantially cover the elements required for a conviction.

16

The proposed defense instruction is an accurate statement of the law. <u>See</u> <u>United States v. Henderson</u>, 307 Fed.Appx. 970, 978 (6th Cir. 2009) (setting forth standard for evaluating jury instructions).  While this Court has not adopted an official jury instruction for extortion under the Hobbs Act, this Court has affirmed acceptable jury instructions for Hobbs Act extortion. <u>Abbey</u>, 560 F.3d at 517-519. To obtain a conviction of extortion under color of official right, the government must prove Mr. Watkins "obtained a payment to which he was not entitled, **knowing that the payment was made in return for official acts**," i.e., a general *quid pro quo* requirement. <u>Abbey</u>, 560 F.3d at 517 (quoting <u>Evans</u>, 504 U.S. at 268), <u>see</u> <u>also Collins</u>, 78 F.3d at 1035 (holding the *quid pro quo* requirement applicable to all § 1951 extortion prosecutions, not just to those involving campaign contributions.).  The instruction also did not instruct that the jury must find Mr. Watkins *"knowingly and deliberately* used his official position in order to obtain money. . . to which he had no right." <u>Cf</u>. <u>Abbey</u>, 560 F.3d at 519 (approving instruction that included "knowingly and deliberately" language).

The only contested issue at trial was why Mr. Watkins accepted the money.  The jury was repeatedly told the simple acceptance of money was illegal, as set forth below. Thus, the requested instruction "concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." <u>Gunter</u>, 551 F.3d at

484 (quoting <u>United States v. Williams</u>, 952 F.2d 1504, 1512 (6th Cir.1991)). "All cases [of Hobbs Act extortion] require the existence of some kind of agreement between briber and official." <u>Abbey</u>, 560 F.3d at 517. The jury should have been required to find beyond a reasonable doubt that Mr. Watkins knew the money received was given in return for official acts. Without this instruction, the jury had no choice but to convict Mr. Watkins *even if it believed his reason for accepting the money*.

**2.    The district court compounded its error by allowing FBI agents to give incorrect legal conclusions.**

The crime of extortion under color of official right requires not just the acceptance of money, but must include acceptance of something of value with the knowledge is was made in return for official acts, among other requirements. 18 U.S.C. § 1951. The crime of bribery also requires not just acceptance of money, but the corrupt solicitation of something of value with an intent to be influenced or rewarded, among other requirements. 18 U.S.C. § 666(a)(1)(B). Neither crime consists of simply receiving money from a contractor.

An incorrect oversimplification of complex legal standards is most unhelpful to the jury and risks conviction upon an incorrect legal standard. District courts "should generally exclude inquiries that ask non-expert witnesses to pontificate upon legal questions." <u>Slayton v. Ohio Dept. of Youth Services</u>, 206 F.3d 669, 676 (6th Cir.

2000).  This Court has held testimony of improper legal conclusions to be unhelpful to the jury, in violation of Fed. R. Evid. 701.  <u>Torres</u>, 758 F.2d at 150.

At trial, FBI Agents Erin Dulaney and Thomas Levy testified as lay witnesses. The district court erroneously allowed misstatements of the law by the agents, and failed to place the "admission" of Mr. Watkins to the agents in proper context. This error was not harmless, nor difficult to detect.  As law enforcement agents, such testimony carries great weight and the jury could reasonably presume the agents would know the correct legal standard.  In the minds of the jury, an "admission" by the accused may eclipse all other evidence.  <u>See</u> <u>Arizona v. Fulminante</u>, 499 U.S. 279, 296 (1991).  Mr. Watkins' statement was not an admission to the crimes charged, rather it was an "admission" of legal conduct – the simple acceptance of money.

During her testimony, Agent Dulaney described her initial meeting with Mr. Watkins and his alleged "admission,"  over Mr. Watkins' objection:

| | |
|---|---|
| DULANEY: | I told him that even if it were a gift, it would be illegal for him to accept money from a vendor doing business with the school district. |
| AUSA: | And what did Mr. Watkins say, if anything, in response to that? |
| DULANEY: | The Court would please excuse my language, he said: I'm f***ed. |
| AUSA: | And would you describe – first of all, did Mr. Watkins say anything else after that? |

DULANEY:        He said: You got me.  We explained to him we were
                looking for him to cooperate.  He could make things
                better for himself.  And he said that he would be
                willing to cooperate and would do anything he could.

[R. 93, Trial Tr., p. 348].  The defense anticipated this misstatement of law since Agent

Dulaney offered the same testimony at the suppression hearing, and unsuccessfully

objected in advance. [R. 93, Trial Tr., pp. 346-347].

On cross-examination, Agent Dulaney attempted to bolster her misstatement of

the law:

AFPD:           You're not an attorney, am I correct?

DULANEY:        No, I'm not.

AFPD:           And your background is primarily in the area of the
                sciences, true?

DULANEY:        Science and criminal justice, yet.

AFPD:           When you made the statement to my client in January
                that the mere receipt of money from a contractor is
                illegal, that was not a correct statement of the law,
                was it, agent?

DULANEY:        Yes, it was.

AFPD:           The correct statement of the law will be what the
                Court instructs the jury on; is that true?

DULANEY:        I do have training in matters of public corruption.

20

[R. 93, Trial Tr., p. 351]. The district court, *sua sponte*, then attempted to provide a limiting instruction:

> COURT:    Ladies and gentlemen, let me interject at this point. I allowed the witness to testify as to what she said to Mr. Watkins. As to whether or not that conduct is a violation of the law will ultimately be decided by you after you hear all the evidence in this case and hear my instructions of law.

[R. 93, Trial Tr., p. 351]. This "limiting" instruction failed to instruct the jury that Agent Dulaney's statement is limited to showing what was said and not to be considered for the truth of the statement. The district court also failed to include a corrective instruction that the testimony was an incorrect statement of the law. Cf. United States v. Brock, 295 Fed.Appx. 792 (6th Cir. 2008) (adverse impact of one misstatement mitigated by court's curative instruction that included correct legal standard). A complete curative instruction was particularly needed because the misstatement was followed by a supposed admission. The jury was thus unaware Mr. Watkins was "admitting" to something that is not a crime – simple acceptance of money.

The error was compounded when Agent Levy next took the stand and also misstated the law by repeating Mr. Watkins supposed "admission." [R. 93, Trial Tr., pp. 382-383]. The district court first sustained Mr. Watkins' objection, but reversed itself and overruled the objection – allowing the following testimony with no further

explanation. [R. 93, Trial Tr., pp. 382-383].   The district court did not give any form of  limiting instruction after Agent Levy's misstatement of law.  Rather, the district court, by overruling defense counsel's objection, implied to the jury the misstatement of law was correct. [R. 93, Trial Tr., p. 382-383].

The implication it was illegal to simply receive money was not rectified by the general jury instructions, which failed to include any instruction regarding misstatements of law by witnesses. [R. 94, Trial Tr., pp. 505-506].  The misstatements were not only erroneous legal conclusions of non-criminal behavior, but blatant misstatements of the legal standards for the alleged crimes.  A substantial risk exists the jury convicted Mr. Watkins based upon misstatements of law rather than the correct legal standard.

### 3. The government misstated the applicable law during closing argument.

After the jury was given instructions, the parties presented closing argument. Notably, in opening argument, the government alluded to Mr. Watkins "admission," failing to explain the "admission" was to non-criminal conduct: "You will also hear from FBI agents, and they'll tell you about what Mr. Watkins said when confronted with the information as a result of these recordings." [R. 93, Trial Tr., p. 227].  The government compounded the district court's instructional error and the two agents' misstatements by also misstating the law during closing argument: "Receiving and

22

accepting a thing of value in your position is enough to violate the law." [R. 94, Trial Tr., p. 552]. Furthermore, the government's misstatement of law was not isolated or accidental, as evidenced by the multiple misstatements of law contained in closing argument:

> He was not allowed to make money from Vision Security Solutions, from a vendor having business before the district. [R. 94, Trial Tr., p. 536].
>
> * * *
>
> And then you heard from FBI agents who told you what the defendant said when he was confronted with these tape recordings. And he said several things. And you heard the language, the colorful language 'I'm f***ed' when seeing these tapes. And as he indicated even here this morning, his testimony was that if this had gotten out and publicized, he would be f***ed. And that's because he knew what he had done was wrong and he had been caught. And I submit to you, ladies and gentlemen, that that evidence shows that he knew he was guilty of the offenses charged.
>
> * * *
>
> I submit to you that the evidence shows, that the inconsistent statements from the defendant shows that he knew what he was wrong, that he had been caught, and that he is guilty of the offense charged in the indictment. It's the defendant's own words. We can't get any clearer than that ladies and gentlemen." [R. 94, Trial Tr., p. 540].
>
> * * *
>
> Bribe means simply accepting something of value. And the defendant, on cross-examination, said yes, I accepted it. That, under the instructions, is a bribe. [R. 94, Trial Tr., p. 541].
>
> * * *
>
> Receiving and accepting a thing of value in your position is enough to violate the law. [R. 94, Trial Tr., p. 552].
>
> * * *

> We submit to you that the evidence shows beyond a reasonable doubt that the documents, through the defendant's own words on tape, *the defendant's statements to the FBI* and on the stand, the defendant is guilty, had the mental state necessary, *knew he had been caught and that's why he said what he had said*. [R. 94, Trial Tr., p. 559 (emphasis added)].

These flagrant misstatements of law not only constitute prosecutorial misconduct, <u>see</u> <u>United States v. Cobleigh</u>, 75 F.3d 242, 247 (6th Cir.1996), but also compound the district court's failure to properly instruct the jury and the erroneous admission of misstatements of law.

### 4.    Conclusion

The government must prove the defendant knew the payment at issue was made in return for official acts to sustain a Hobbs Act extortion conviction. <u>Abbey</u>, 560 F.3d at 517.   This element was missing from the jury instructions. Thus, it is unknown whether the jury found sufficient evidence of each essential element required for a guilty verdict.   The improper instructions were compounded by misstatements of law from two FBI agents and the government's closing argument.   The missing element was the central contested issue at trial – the reason why Mr. Watkins accepted the money.   Because the jury did not find an essential element of the crime, the jury's verdict cannot stand.   Mr. Watkins asks this Court to vacate his conviction.

## Assignment of Error No. II

**There was insufficient evidence presented at trial to prove the charges.**

### A.    Standard of Review

This Court resolves a sufficiency of the evidence challenge by determining "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Sliwo, 620 F.3d 630 (6th Cir. 2010) (citations omitted).

### B.    Applicable Law

Mr. Watkins properly moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29. [R. 94, Trial Tr., pp. 399-404, 480-484; R. 47, Motion for Acquittal].  The district court partially granted the motion, dismissing one count of bribery,[1] but erroneously denied the motion as to Counts 1-3. [R. 94, Trial Tr., pp. 480-484].

#### 1.    The government failed to provide sufficient evidence of extortion under color of official right.

The government failed to prove two essential elements required for Hobbs Act extortion under color of official right.  First, jurisdiction through an effect on

---

[1] The district court dismissed Count 4 because the government failed to meet the minimum $5,000 threshold requirement under 18 U.S.C. § 666(a)(1)(B). [R. 47, Motion for Acquittal; R. 94, Trial Tr., pp. 480-484].  See United States v. Mills, 140 F.3d 630 (6th Cir. 1998).

commerce was not proven because the money involved came from the F.B.I. Second, the government did not prove the public official understood the transaction was in return for official acts.

### (a)    The money did not travel in interstate commerce.

The money involved in the offense did not travel in interstate commerce, which is required to satisfy the Hobbs Act's jurisdictional nexus.[2] <u>United States v. Ostrander</u>, 411 F.3d 684, 691 (6th Cir. 2005). It is undisputed the $7,000 in cash from Ms. Newsome was provided by the FBI. [R. 93, Trial Tr., pp. 373-374, 377-378].

In <u>United States v. DiCarlantonio</u>, 870 F.2d 1058 (6th Cir. 1989), this Court held money supplied by the FBI to catch an extorter or a bribe acceptor does not have a *de minimis* effect on commerce as a matter of law. <u>Id</u>. at 1061. Because the FBI supplied the money, there is no *de minimis* effect on commerce, and thus no jurisdiction.

<u>DiCarlantonio</u> recognized receipt of FBI funds "erects no barrier to attempt charges . . . ." <u>Id</u>. at 1060; <u>see also</u> <u>United States v. Peete</u>, 919 F.2d 1168, 1175 (6th Cir. 1990) (F.B.I. funds were sufficient to establish only an *attempt* to violate the Hobbs Act). The superceding indictment contains the word "attempt" in Counts 1 and 3. [R. 19, Superseding Indictment, ¶¶ 8, 12]. The verdict form, however, stated

---

[2] The Hobbs Act punishes anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do. . . ." 18 U.S.C. § 1951(a).

"extortion under color of official right," without reference to attempt. [R. 51, Verdict]. Indeed, throughout the entire trial proceedings (with the exception of the aforementioned superseding indictment), there was no mention of "attempt" regarding the extortion charge.

Furthermore, the jury was not instructed on an attempted violation, rather the jury was instructed on a substantive violation of the Hobbs Act. While the district court's general jury instruction did read the indictment, which included the word attempt in Counts 1 and 3, the specific instruction on the required elements of extortion did not include attempt. [R. 94, Trial Tr., pp. 514-515]. Thus, the jury convicted Mr. Watkins of a substantive violation of the Hobbs Act and not an attempted violation. As a result, the government failed to prove the requisite jurisdictional nexus and the conviction must be reversed.

### (b) The evidence failed to establish the public official understood the transaction was in return for official acts

The government failed to prove Mr. Watkins knowingly obtained the money in return for official acts, i.e., the general *quid pro quo* requirement. "[I]n this Circuit, the Hobbs Act requires the government to prove the existence of a *quid pro quo*" for extortion under color of official right. Abbey, 560 F.3d at 517. This Court noted the necessary showing of proof will "vary based on context," but "all cases require the existence of some kind of agreement between briber and official." Id. The inquiry

27

focuses on the *public official's* understanding of the transaction. Id. at 518-519 (citations omitted).

The government alleged the money given to Mr. Watkins somehow "facilitate[d] the progress of the contract." [R. 94, Trial Tr., p. 483].[3]  Mr. Watkins denied he accepted the money to exert his official influence over the contract.  The contract was never actually delayed or hindered in any way.  Ms. Newsome testified she received timely payments on the contract. [R. 93, Trial Tr., p. 251].  Ms. Newsome testified that, while Mr. Watkins was her point-of-contact at CMSD, she did not even know "who the decision-maker was" on the contract. [R. 93, Trial Tr., p. 297].  Mr. Fultz testified Mr. Watkins had no signature requirement for invoice and Fultz could independently verify Mr. Watkins' oral confirmations that the contract work was completed. [R. 93, Trial Tr., pp. 333, 339].

As set forth below, the conversations between Ms. Newsome and Mr. Watkins allegedly arranging the payments were not recorded, nor could Ms. Newsome provide

---

[3] The government stated the money was not a reward for the awarding of the contract. [R. 94, Trial Tr., p. 483].   The district court found the contract to be legitimate, consisting of bona fide compensation paid in the usual course of business. [R. 94, Trial Tr., p. 484].  The June 1, 2008 contract was necessary to CMSD operations, won fair and square by VSS, the most qualified vendor, and was properly fulfilled by VSS. [R. 93, Trial Tr., p. 296, 326].  Ms. Newsome testified all contracts between VSS and CMSD were legitimate and performed accordingly. [R. 93, Trial Tr., p. 296].

the exact dates for the alleged conversations. [R. 93, Trial Tr., p. 246-247; 259, 303-305, 317, 356].

Mr. Watkins understood the money to be a retainer for future consulting work with VSS. [R. 94, Trial Tr., pp. 452-453, 459, 467]. Ms. Newsome has a history of asking Mr. Watkins for help outside of CMSD, such as when Mr. Watkins provided a recommendation in 2007 for VSS to obtain a certification. [R. 94, Trial Tr., p. 455-456]. At the October 28, 2008 lunch meeting, Mr. Watkins and Ms. Newsome discussed a previous recommendation from Mr. Watkins regarding someone in the Cleveland area Ms. Newsome was considering hiring. [R. 93, Trial Tr., p. 300, 454]. In addition, to earn extra income, Mr. Watkins took outside jobs of which his supervisor was fully aware. [R. 93, Trial Tr., p. 333-335; R. 94, Trial Tr., p. 451-452]. Future employment with VSS was discussed at the December 18 meeting. [R. 93, Trial Tr., p. 309-310, 314]. Kim Watkins testified that, during this time, she and Mr. Watkins discussed him working for VSS in the future once Mr. Watkins' pension was fully vested. [R. 94, Trial Tr., p. 475].

Ms. Newsome's mistaken assumptions as to the purpose of the money are not decisive of the issue; rather, it is Mr. Watkins' understanding of the transaction that the government was required to prove. Abbey, 560 F.3d at 518-519. Therefore, the government failed to meet its burden of proof.

29

## 2. The government failed to provide sufficient evidence of bribery in a federally funded program.

The government failed to prove Mr. Watkins corruptly solicited, demanded, accepted or agreed to accept something of value with the intent to be influenced or rewarded in connection with a business transaction of CMSD. See 18 U.S.C. § 666(a)(1)(b). Mr. Watkins incorporates the argument set forth above regarding insufficient evidence of extortion.

Mr. Watkins did not deny accepting the $7,000 in cash, believing the money to be a  a retainer for future consulting work. [R. 94, Trial Tr., p. 459-461, 465- 467]. Mr. Watkins never asked for an envelope, payment, or bribe during the videotaped lunch meetings. [R. 93, Trial Tr., p. 302].  Despite the continual reference by the government to "kickbacks," Ms. Newsome admitted Mr. Watkins never used that term in any conversation. [R. 93, Trial Tr., p. 303].   Mr. Watkins denies soliciting or accepting a bribe. [R. 93, Trial Tr., p. 406-407].

 Ms. Newsome claims four conversations took place in which Mr. Watkins allegedly solicited a bribe prior to the first lunch meeting. [R. 93, Trial Tr., pp. 316-317].  Yet, Ms. Newsome could not provide the dates for three of the alleged conversations and none of the alleged conversations were recorded.

The first alleged conversation took place in June 2008, a week after VSS was awarded the contract, during which Mr. Watkins allegedly stated "now that you won

the award, it is customary for the person who brought you the contract to get a finder's fee of two to five percent." [R. 93, Trial Tr., p. 246]. No exact date or recording was provided for this alleged conversation. [R. 93, Trial Tr., p. 246, 303].

The second alleged conversation is vaguely referenced as a telephone conversation occurring "in this time frame" after VSS received the first timely contractual payment. [R. 93, Trial Tr., p. 252-253]. During this telephone call, Mr. Watkins allegedly stated "it was customary to have a two to five percent finder's fee on a contract and that we needed to have somebody on the inside." [R. 93, Trial Tr., p. 252]. Again, no date or recording was provided. [R. 93, Trial Tr., p. 303].

The third conversation allegedly took place during an in-person meeting between Ms. Newsome and Mr. Watkins at his office in Cleveland on August 28, 2008. [R. 93, Trial Tr., p. 254]. On August 27, 2008, Ms. Newsome emailed her travel plans to Mr. Watkins for an 11:00 a.m. meeting, and he sent the reply "Absolutely$." [R 93, Trial Tr., p. 255-256]. Mr. Watkins testified the dollar sign in this email was a simple typo. [R. 94, Trial Tr., p. 461].[4] Ms. Newsome forwarded this email to Mr. Fultz on the morning of August 28, 2008 stating she was concerned about "possible improprieties," but was unable to speak to Mr. Fultz until later that evening. [R. 93, Trial Tr., p. 257].

---

[4] The government's sentencing memorandum illustrates how easy it is to make a typographical error as it quotes the email as stating: "Absolutely!" [R. 65, Gov. Sent. Memo, p. 8].

On August 28, 2008, Ms. Newsome met with Mr. Watkins at his office in Cleveland for about thirty minutes, during which she asked if there was anything else she could do for him and he allegedly replied "an envelope." [R. 93, Trial Tr., p. 259, 306]. Again, no recording was provided. [R. 93, Trial Tr., p. 303, 307].

The fourth alleged conversation is a telephone conversation from the week before the October 28, 2008 lunch meeting. [R. 93, Trial Tr., p. 265]. Ms. Newsome did not provide much detail as to this alleged conversation, merely testifying that "he mentioned my visit the following week and mentioned the envelope." [R. 93, Trial Tr., p. 265]. The FBI was recording phone conversations between Mr. Watkins and Ms. Newsome at this time, yet no date or recording was provided for this alleged conversation. [R. 93, Trial Tr., p. 282]. Furthermore, when recounting the alleged conversations on cross-examination, Ms. Newsome made no mention of this fourth alleged conversation. [R. 93, Trial Tr., p. 303]. Mr. Watkins denies the content of all four alleged conversations. [R. 93, Trial Tr., p. 406-407].

The testimony of Ms. Newsome alone, without further corroboration of the four alleged conversations, is insufficient to establish bribery. The miscommunication between Mr. Watkins and Ms. Newsome does not arise to a criminal offense. Thus, even in a light most favorable to the government, there is insufficient evidence of bribery.

**C.      Conclusion**

The district court erred in denying Mr. Watkins's motion for acquittal on Counts 1-3 because the government failed to provide sufficient evidence of extortion and bribery.  For the reasons set forth above, Mr. Watkins asks this Court to vacate his conviction.

**Assignment of Error No. III**

**Mr. Watkins was deprived of his Sixth Amendment right to a trial before a jury representing a fair cross-section of the community.**

**A.      Standard of Review**

This Court reviews de novo constitutional challenges to the jury selection process under the Sixth Amendment.  United States v. Odeneal, 517 F.3d 406, 412 (6th Cir. 2008).

**B.      Applicable Law**

The entire venire panel contained no African-Americans or minorities, failing to represent a fair cross-section of the seven counties making up the Akron region of the Northern District of Ohio.  The failure to summon the venire from driver's license lists and the failure to ensure names drawn from the master wheel are proportional to county populations resulted in the systematic exclusion of minorities.  Mr. Watkins does not limit this argument to African-Americans.

33

Case: 10-4076    Document: 30    Filed: 02/22/2011    Page: 45

Mr. Watkins preserved this constitutional challenge by asking the district court to dismiss the venire and summon a new one before the start of voir dire. [R. 92, Trial Tr., p. 15]; United States v. Fantroy, 146 Fed.Appx. 808, 814 (6th Cir. 2005). The district court overruled the motion without a hearing:

> The venire was chosen as any other jury is chosen here in the Northern District of Ohio. While it may be unfortunate that there is not more diversity on the jury, that does not mean the jury wasn't properly selected nor does that mean the venire should be dismissed.

[R. 92, Trial Tr., p.15].

Mr. Watkins was deprived of his Sixth Amendment guarantee to "a jury drawn from a fair cross section of the community," which is "fundamental to the jury trial." Taylor v. Louisiana, 419 U.S. 522, 527-30 (1975). The district court is required to select juries at "at random from a fair cross section of the community in the district or division wherein the court convenes." Fantroy, 146 Fed.Appx. at 813 (citing United States v. Ovalle, 136 F.3d 1092, 1099 (6th Cir.1998)); see also Lockhart v. McCree, 476 U.S. 162 (1986); Holland v. Illinois, 493 U.S. 474 (1990). Mr. Watkins need not prove actual prejudice, "to prove a violation of the Sixth Amendment, a [defendant] need not prove that the outcome of his or her particular trial would have been substantively different had the petit jury been drawn from a representative pool." Smith v. Berghuis, 543 F.3d 326, 336 (6th Cir. 2008).

34

The United States District Court for the Northern District of Ohio at Akron summons jurors from seven counties: Summit, Carroll, Holmes, Tuscarawas, Portage, Wayne, Stark. For the Court's convenience, the following chart contains U.S. Census data regarding the racial population percentages for all seven counties in 2009:[5]

| | Summit | Carroll | Holmes | Tuscarawas | Portage | Wayne | Stark |
|---|---|---|---|---|---|---|---|
| **White** | 82.3% | 97.8% | 99.0% | 97.6% | 92.9% | 96.3% | 89.8% |
| **African-American** | 14.1% | 0.9% | 0.4% | 0.9% | 4.5% | 1.7% | 7.5% |
| **American-Indian or Alaska Native** | 0.2% | 0.4% | 0.1% | 0.2% | 0.2% | 0.2% | 0.3% |
| **Asian** | 2.0% | 0.1% | 0.1% | 0.3% | 1.1% | 0.9% | 0.8% |
| **Hawaiian-Pacific Islander** | -- | -- | -- | 0.1% | -- | -- | -- |
| **Two or more races** | 1.4% | 0.8% | 0.4% | 0.9% | 1.3% | 1.0% | 1.6% |
| **Hispanic or Latino** | 1.3% | 0.8% | 0.8% | 1.4% | 1.0% | 1.4% | 1.3% |
| **White, not Hispanic** | 81.2% | 97.0% | 98.2% | 96.4% | 92.0% | 95.0% | 88.7% |

The first two elements needed for a prima facie violation of the fair cross-section requirement are clear. Duren v. Missouri, 439 U.S. 357, 364 (1979). First, minorities, including African-Americans, are classified as distinctive groups in the community.

---

[5] The information in this chart is obtained from the U.S. Census Bureau, 2009 State & County QuickFacts, available online at *http://quickfacts.census.gov/qfd/index.html*.

35

Smith, 543 F.3d at 336 ("it is clear that African Americans are a distinctive group.");

Echlin v. LeCureux, 995 F.2d 1344 (6th Cir. 1993) ("the exclusion of entire racial

groups from jury service for reasons wholly unrelated to the ability of the individuals

to serve as jurors in a particular case is squarely within the parameters of the purposes

of the fair cross-section requirement."). Second, there were *no* minorities represented

in the venire, including African-Americans. [R. 92, Trial Tr., p. 15].

The third and final element requires a showing of systematic exclusion of the

group in the jury selection process. Duran, 439 U.S. at 364. "Systematic" exclusions

need not be "purposeful" but must be regular and foreseeable. Id. Mr. Watkins need

not prove the under-representation of a distinctive group came as a result of intentional

discrimination. Id. at 368 n. 26.

The Jury Selection Plan for the Northern District of Ohio ("Plan") was approved

by the Judicial Council for the Sixth Circuit on December 22, 2009. See Jury Selection

Plan, F-1, H-1, p. 9 (N.D. Ohio adopted January 12, 2010).[6] Prior approval, however,

does not prevent this Court from finding the Plan unconstitutional. Ovalle, 136 F.3d

at 1095 (finding the Jury Selection Plan of the United States District Court for the

Eastern District of Michigan, previously approved by the Judicial Council, was in

---

[6] Available online at *http://www.ohnd.uscourts.gov/assets/Jury_Service/ JurorSelectionPlan.pdf.*

36

violation of the Fifth Amendment). Two fatal flaws in the Plan systemically prevent a fair-cross-section representation of minorities.

First, the Plan only summons jurors from voter registration lists. Plan, F-1, H-1, pp. 3-4. An easy way to include fuller representation of all races would be to also summon jurors from driver's license and state identification lists. This Court recognizes adding drivers' license lists as a source of master wheel jury selection is an easy way to diversify the pool of potential jurors:

> . . . alternative methods of broadening membership in the jury pool could have been utilized. The Eastern District of Michigan could have chosen to supplement the voters' list and driver's license list to diversify the pool of potential jurors. Such measures can establish a jury pool that represents a fair cross section of the community . . . .

Ovalle, 136 F.3d at 1106. Many courts – including several district courts within this Circuit[7] – choose to supplement voter lists with driver's license and state identification lists, presumably to more accurately reflect a fair-cross-section of the community. Supplementing the jury pool with driver's license and state identification lists requires minimum effort, while significantly broadening the potential jury pool for each venire.

---

[7] See Jury Selection Plan (S.D. Ohio, filed Jan. 12, 2010 ), available online at *http://www.ohsd.uscourts.gov/jurorinfo/Juror%20Selection%20Plan.pdf*; Jury Selection Plan (E.D.Mich., approved Dec. 5, 2000) available online at *http://www.mied.uscourts.gov/Rules/Plans/00-AO-083.pdf*; Jury Notice of Selection (M.D.Tenn. 2010), available online at *http://www.tnmd.uscourts.gov/ notice_selection*.

Second, the Plan does *not* ensure county proportionality in an individual venire. This is particularly important in the Northern District of Ohio because the most minorities live in two counties, Summit and Stark, while other counties, such as Holmes, have less than 2% minority populations.  For example, if each venire was required to consist of 68% persons from Summit and Stark County (their population percentage in the Akron region),[8] the potential for diversity among the venire panel increases considerably.  Yet, under the Plan, 68% of the names chosen from the master wheel are not required to be from Summit and Stark County.  If the Plan required each venire to reflect the county proportion, the chances of the venire accurately reflecting a fair-cross-section would be greatly increased.

---

[8]

| County | Population | Percentage |
|--------|-----------|-----------|
| Summit | 542,405 | 40 % |
| Carroll | 28,539 | 2 % |
| Holmes | 41,854 | 3 % |
| Tuscarawas | 91,137 | 7 % |
| Portage | 157,530 | 12 % |
| Wayne | 114,222 | 8 % |
| Stark | 379,466 | 28 % |
| **TOTAL** | **1,355,153** | **100 %** |

U.S. Census Bureau, 2009 State & County QuickFacts, available online at *http://quickfacts.census.gov/qfd/index.html*.

38

The failure to ensure county proportionality in each venire is even more troubling because the Plan requires the master wheel to reflect the county proportions. Plan, G-1 and J-1, pp. 4-5.  It is not only the master wheel that must represent a cross-section, but also the venire itself. Taylor, 419 U.S. at 538.  The actual venire pools under the Plan do not represent the percentage of the total population or voters of each county, creating the unconstitutional risk that a low number of minority persons will be included in the venire due to the uniquely unequal racial proportions across the seven counties.  Adding the minor step of ensuring proportional county representation would increase chances of jury pool diversity.

Selection is now accomplished electronically, using the Jury Management System (JMS) program, provided and supported by the Administrative Office of the U.S. Courts, which is already programmed to provide proportional names by county for the master wheel. Plan, G and H, p. 4.  Presumably, utilizing JMS to also provide proportional names by county for each venire would be a simple task.

Because Mr. Watkins has established a prima facie case, the burden now shifts to the government to prove the jury selection process advances "a significant state interest despite the disproportionate exclusion of a distinctive group." Duren, 439 U.S. at 367-68.    The government's failure to adopt practices that would increase minority representation on jury venires indicates the racially-unbalanced venire is a result of

39

systemic exclusion.  Thus, Mr. Watkins was deprived of his Sixth Amendment right to a jury representing a cross-section of his community and asks this Court to vacate his conviction.

**Assignment of Error No. IV**

> **The district court improperly calculated the advisory guideline range by applying a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and four-level enhancement for high-level position pursuant to U.S.S.G. § 2C1.1(b)(3), resulting in a procedurally and substantively unreasonable sentence.**

**A.     Standard of Review**

This Court reviews the calculation of the advisory sentencing guidelines to determine if the district court imposed a procedurally unreasonable sentence. United States v. Bullock, 526 F.3d 312, 315 (6th Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 51 (2007)).  The factual findings are reviewed for clear error and legal conclusions, including the determination of whether a particular Guidelines enhancement applies, are reviewed de novo. Bullock, 526 F.3d at 315.  Sentences are reviewed for substantive reasonableness under an abuse-of-discretion standard. United States v. Vonner, 516 F.3d 382, 389 (6th Cir. 2008).

**B.     Applicable Law**

Mr. Watkins was punished severely for presenting a defense at trial. By failing to make an adequate finding of perjury, the district court improperly applied a two-level enhancement for obstruction of justice. United States v. Goff, 2010 WL 3736261, *27 (6th Cir. Sept. 17, 2010). The district court exacerbated its error by unreasonably varying upward 21 months for this alleged perjury. The record does not support a finding of perjury, and the sentence punishes Mr. Watkins for exercising his right to testify and present a defense. Furthermore, the district court ignored testimony from Mr. Watkins' direct superior, Mr. Fultz, and improperly imposed a four-level enhancement for a high-level position, resulting in a procedurally and substantively unreasonable sentence.

## 1.    Mr. Watkins did not obstruct justice.

At sentencing, the district court twice stated the "most honest statement [Mr. Watkins] ever made" was "I'm f***ed" to the FBI agents "when he knows that he's been caught." [R. 95, Sent. Tr., pp. 49, 60-61]. As addressed above, Mr. Watkins' comment to the FBI agents was in direct response to the agents' misstatement of the law – that it was illegal simply to accept money. By again relying on this non-admission without placing it in the proper context, the district court compounded its earlier error which allowed a misstatement of law to influence the jury. The district court then unreasonably found Mr. Watkins' testimony and defense of his case to be

41

perjurious, erroneously applying a § 3C1.1 enhancement over Mr. Watkins' objection. [R. 95, Sent. Tr., p. 20].

A two-level enhancement for obstruction of justice is not to be used as punishment for the exercise of a constitutional right, which includes the right to testify at trial. See U.S.S.G. § 3C1.1, app. note. 2. The Sentencing Guidelines provide guidance when considering application of this enhancement for material false testimony, stating, "the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1, app. note. 2.

A district court may not base a finding of perjury upon the mere fact that the jury returned a verdict of guilty after the defendant testified. United States v. Spears, 49 F.3d 1136, 1143 (6th Cir. 1995). "Allegedly false statements should be evaluated in a light most favorable to the defendant." Id. The Supreme Court warns against enhancing sentences "as a matter of course whenever the accused takes the stand and is found guilty." United States v. Dunnigan, 507 U.S. 87, 97 (1993). To protect against this risk, "the court must: (1) identify those particular portions of testimony it considers to be perjurious; and (2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for

42

a finding of perjury." United States v. Boring, 557 F.3d 707, 711 (6th Cir. 2009) (citations omitted). A witness commits perjury by giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." United States v. Comer, 93 F.3d 1271, 1283 (6th Cir. 1996) (citations omitted).

At sentencing, the district court acknowledged it was required to "apply the elements of perjury" and "make specific findings on the record as it relates to that finding [of perjury]." [R. 95, Sent. Tr., p. 27]. Yet, the district court failed to a sufficient finding of perjury, stating only:

> It's the Court's view that indeed the enhancement clearly does apply in this case.
>
> The Court will set forth in a sentencing memorandum specific portions of the transcript that I believe apply. I've looked at the transcript, although I don't necessarily believe that I need to do so given the numerous and the persistent falsehoods that were made by the defendant during the course of these proceedings that are easily belied by his actions and testimony – or actions as reflected in the videotape in this matter.
>
> The defendant repeatedly lied, and I think the jury clearly rejected those lies in terms of referencing these bribes as finder's fees. There's the testimony of Ms. Newsome with regard to the fact that these were bribes, five to seven percent of the contract.[9]

---

[9] Ms. Newsome testified Mr. Watkins allegedly asked for a payment of 2-5% of the contract, not 5-7% as the district court erroneously stated. [R. 93, Trial Tr., pp. 246, 252].

> The evidence is overwhelming that indeed this defendant repeatedly lied about any number of events and transactions occurring and those related to these bribes. And the two-level enhancement clearly applies, and I'll address that further as we deal with the 18:3553(a) factors.

[R. 95, Sent. Tr., p. 27-28].

Despite the district court's promise to "set forth in a sentencing memorandum specific portions of the transcript that I believe apply" to this enhancement, the sentencing memorandum failed to do so. The district court claimed Mr. Watkins' falsehoods were "numerous and persistent," [R. 95, Sent. Memo., pp. 27-28], yet only referred to his testimony regarding the "finder's fee" as perjury. [R. 72, Sent. Memo, pp. 3-4]. Exacerbating its error, the district court went on to base a 21-month upward variance, in part, on this erroneous finding of perjury:

> Finally, the Court notes that Watkins' perjury has been built into the advisory guideline range. However, the Court finds that the two-level enhancement is insufficient given the extent of Watkins' dishonesty. In many cases, the obstruction enhancement is applied once the Court finds that one witness is simply more credible than the defendant. In the instant matter, the Court had the ability to review the videotapes of the bribery transactions. Despite the overwhelming evidence contained in the tapes and Newsome's testimony regarding the bribery, Watkins chose to take the stand and insist that the tapes demonstrated a mere business transaction. The fact that Watkins so clearly views bribery as "business as usual" is particularly troubling to the Court and is not sufficiently punished through the two-level enhancement.

[R. 72, Sent. Memo, pp. 7-8].

44

Reversal is warranted when the district court fails to make specific findings of perjury. United States v. Sassanelli, 118 F.3d 495, 500 (6th Cir. 1997) (finding "every other witness said something contrary to defendant's position." was insufficient to support perjury enhancement). Furthermore, when compared to other obstruction cases from this Circuit, Mr. Watkins' testimony falls short of obstruction of justice. See United States v. Chance, 306 F.3d 356, 391 (6th Cir. 2002) (defendant did not just deny guilt, but denied "virtually every single fact other witnesses testified to," including a denial of a relationship with payor and a denial that the defendant took money); United States v. Mise, 240 F.3d 527, 531 (6th Cir. 2001) (defendant convicted of manufacturing and possessing pipe bomb denied he made any pipe bomb in direct contradiction to other witnesses). During Mr. Watkins' testimony, by comparison, he readily admitted:

(1)    he was expecting money from Ms. Newsome on October 28, 2008;

(2)    he accepted $7,000 total in cash from Ms. Newsome;

(3)    he spent the money on personal bills;

(4)    he had no documentation of a consulting arrangement with Ms. Newsome; and

(5)    he did not report the $7,000 to the IRS.

[R. 94, Trial Tr., pp. 464-469].

45

The only contested issue at trial was the reason for the payments – the central element the jury failed to consider.  Although his testimony conflicted with the testimony of Ms. Newsome as to the reason for the payments, Mr. Watkins did not attempt to place blame elsewhere or obstruct justice.  Conflicting testimony is not necessarily the equivalent of false testimony. See Spears, 49 F.3d at 1143 ("It is not enough for a sentencing judge to recognize conflicting testimony and resolve in his own mind which witness is credible"); United States v. Paulette, 457 F.3d 601 (6th Cir. 2006) (a sentencing court must tie the elements of perjury to specific facts).

Therefore, the district court erroneously applied a § 3C1.1 enhancement and unreasonably varied upward based upon an insufficient finding of perjury, resulting in a procedurally and substantively unreasonable sentence.  Mr. Watkins asks this Court to vacate his sentence and remand with instruction not to apply § 3C1.1.

### 2.    Mr. Watkins did not hold a high-level position.

Mr. Watkins challenged the application of an U.S.S.G. § 2C1.1(b)(3) enhancement for high-level position based on the trial testimony of Lester Fultz, the Director of the Department of Public Safety at CMSD and Mr. Watkins' supervisor. [R. 93, Trial Tr., pp. 319-320].  A high-level decision-making public official is defined as:

> A position characterized by a direct authority to made decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process.

U.S.S.G. § 2C1.1(b)(3), app. note. 4(A). The application of a high-level position enhancement is fact-specific, and a district court must examine the actual responsibilities of the defendant as a public official. <u>United States v. McIntosh</u>, 983 F.2d 1070 (6th Cir. 1992).

The district court focused its application of the enhancement on the "substantial influence" language of this guideline, finding Mr. Watkins to have "substantial influence over the decision-making process *related to the award of these technical contracts.*" [R. 95, Sent. Tr., p. 22-23]. The issue at trial, however, was not awarding of the contract, as the government admitted. [R. 94, Trial Tr., p. 483]. Mr. Fultz testified Mr. Watkins had no direct authority to make decisions over who received contracts. Mr. Fultz testified he retained sole authority to decide who received contracts. [R. 93, Trial Tr., p. 332, 337-338]. Rather, the offense centered around the alleged need for ongoing "facilitation" of the contract's progress by Mr. Watkins. Yet, the district court's justification for this enhancement centers around the bidding process for the contract – a process the witnesses and the court earlier found to be fair and square. [R. 72, Sent. Memo, pp. 4-5; R. 93, Trial Tr., pp. 296, 326-330; R. 94, Trial

47

Tr., p. 484]. Thus, Mr. Watkins' role in the bidding process was irrelevant to whether he exerted substantial influence over the progress of contracts.

The district court also erroneously justified the enhancement on the basis that "Fultz testified that Watkins had the ability to single-handedly stop payment on invoices. If Watkins expressed that a repair had not been substantially completed, Fultz would not pay the invoice." [R. 93, Trial Tr., p. 421]. Contrary to the district court's finding, Mr. Watkins could not "single-handedly stop payment." Mr. Watkins did not even handle fiscal matters. [R. 93, Trial Tr., p. 421]. Payments were issued by CMSD's fiscal officer, Nancy Pettit. [R. 93, Trial Tr., p. 421]. Mr. Watkins signature was not required for an invoice. [R. 93, Trial Tr., p. 332-333]. While invoices were paid after Mr. Watkins indicated the work was completed, any indication from Mr. Watkins whether work had been completed was easily independently verifiable. [R. 93, Trial Tr., p. 339]. There is no allegation Mr. Watkins ever misrepresented whether work had been properly completed by a vendor. Mr. Fultz further testified Mr. Watkins did not oversee the contract once it was awarded. [R. 93, Trial Tr., p. 338]. Ms. Newsome admitted she did not know "who the decision-maker was" under the contract. [R. 93, Trial Tr., p. 297].

The district court also attempted to justify application of this enhancement on the basis that Mr. Watkins had been employed with CMSD longer than his supervisor,

Mr. Fultz. [R. 72, Sent. Memo, p. 5]. It defies common sense, and the organizational structure of CMSD, to say a newer supervisor does not have authority over a long-term employee within his division. Mr. Fultz clearly testified as to the chain of command with respect to contracts. [R. 93, Trial Tr., pp. 331-332, 337-338]. The district court misconstrued Mr. Fultz testimony that he relied on Mr. Watkins "in the area that he worked in." [R. 93, Trial Tr., p. 337]. Mr. Watkins' duties were described by Mr. Fultz as hands-on, e.g., maintaining functionality of the closed circuit security TV system, determining the best camera coverage and equipment needs, and purchasing equipment. [R. 93, Trial Tr., p. 321]. Mr. Fultz relied on Mr. Watkins for technical expertise regarding the security system, but Mr. Fultz did not rely on Mr. Watkins expertise in paying vendors.

Mr. Watkins did not hold a position of unreviewable power, nor was Mr. Watkins in a sole position of authority over the CMSD security camera contract. Thus, Mr. Watkins' "authority" differs greatly from the cases where this Court has approved the application of § 2C1.1(b)(3). Cf. Chance, 306 F.3d 356 (enhancement for high-level decision-making position applied because defendant was highest law enforcement official in the county); United States v. Mack, 159 F.3d 208 (6th Cir. 1998) (high level decision-making enhancement applied where defendant was prison security chief and responsible for 400 uniformed officers); see also McIntosh, supra.

49

(high-level enhancement did not apply because although defendant was appointed chief of police, all important decision-making is done by the mayor and city council).

Therefore, the district court erred in applying a four-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(3) because Mr. Watkins was not in high-level position with decision-making authority. Mr. Watkins asks this Court to vacate his sentence and remand with instruction not to apply § 2C1.1(b)(3).

## Assignment of Error No. V

**The district court imposed a procedurally and substantively unreasonable sentence that is not justified in light of 18 U.S.C. § 3553(a) sentencing factors.**

### A.    Standard of Review

Procedural review includes whether the district court considered the § 3553(a) factors and the parties arguments, and whether the court adequately explained why it imposed the chosen sentence. United States v. Bolds, 511 F.3d 568, 581 (6th Cir. 2007). When a district court varies upward, the justification must be "sufficiently compelling to support the degree of the variance" considering the totality of the circumstances. United States v. Ruiz, 2010 WL 4721146, * 2 (6th Cir. Nov. 15, 2010) (citing Gall, 552 U.S. at 50). A sentence is substantively unreasonable "if it is selected arbitrarily, if it is based on impermissible factors, if it fails to consider a relevant

sentencing factor, or if it gives an unreasonable amount of weight to any pertinent factor." United States v. Conaster, 514 F.3d 508, 520 (6th Cir. 2008).

**B.    Applicable Law**

The district court's six-year sentence, constituting an upward variance of 21 months from the advisory guidelines range of 41-51 months, is procedurally and substantively unreasonable.  The upward variance, imposed *sua sponte*, is not justified under 18 U.S.C. § 3553(a) and is not supported by the facts.  The district court failed to sufficiently justify the upward variance, and: (1) created an unwarranted disparity between this case and similar cases; (2) improperly considered allegations from 2003 to erroneously conclude Mr. Watkins exhibited a history and propensity for this conduct; (3) improperly found the two-level enhancement for perjury was insufficient to reflect the seriousness of such alleged perjury; and (4) imposed a sentence that fails to reflect the seriousness of the offense and that promotes disrespect for the law.

### 1.    The district court created unwarranted sentencing disparity between similarly situated defendants.

District courts must "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  The district court justified the upward variance based, in part, on general deterrence needs, citing "over 30 guilty pleas" for federal corruption charges from Cuyahoga County. [R. 95, Sent. Tr., p. 58].   The district court did not specify which

51

corruption cases it was referring to, and acknowledged few sentences had been issued, but nonetheless varied upward:

> Due to the vast number of guilty pleas already generated, there is no question that bribery and corruption has run amok. Watkins contributed to that problem. As such, general deterrence in this arena is important to this Court and that importance is reflected in the ultimate sentence chosen by the Court.

[R. 72, Sent. Memo., p. 7].

Mr. Watkins' sentence is much higher than several recent federal sentences *given by the same district court* in two recent corruption cases involving eleven school district officials and contractors in Cuyahoga County. In United States v. Canepa, No. 1:10-CR-00348 (N.D. Ohio, filed Aug. 19, 2 010), two defendants pled guilty to conspiracy, bribery and extortion in connection to a scheme involving $3,000 in cash and $21,000 worth of landscaping in exchange for over $100,000 worth of contracts with Maple Heights Schools in Cuyahoga County. One defendant received three years probation, a downward variance from the advisory guideline range of 8-14 months imprisonment, imposing a $4,000 fine and restitution totaling $39,502. Canepa, No. 1:10-CR-00348 (Amended Judgment filed Dec. 29, 2010).  The other defendant in Canepa has not been sentenced.  In United States v. Krause et al, No. 1:10-CR-00235 (N.D.Ohio, filed May 26, 2010), nine defendants pled guilty to various counts of conspiracy and theft of cash, good and services ranging from $1,200 - $30,000 in

52

connection to multiple contracts with Maple Heights Schools in Cuyahoga County. Of the nine defendants, five have been sentenced. Three received three years probation (varying downward from advisory ranges of 8-12 months, 12-18 months and 18-24 months). <u>Krause</u>, No. 1:10-CR-00235 (Judgments filed Dec. 16, 2010). One received six months imprisonment, and the longest sentence imposed thus far is 12 months plus one day imprisonment (varying downward from advisory range of 18-24 months). <u>Krause</u>, No. 1:10-CR-00235 (Judgment filed Dec. 17, 2010). Restitution was also ordered joint and severally ranging from $36,752.50 to $65,502.50. <u>Id.</u>

These recent sentences imposed by the same district court illustrate the unwarranted disparity between Mr. Watkins' six-year sentence for $7,000 in payments and similar cases involving greater sums of money. <u>See United States v. Wallace</u>, 597 F.3d 794 (6th Cir. 2010) (finding plain error in district court's failure to consider related federal sentences). The imposition of a six-year sentence – unreasonably higher than similar defendants in front of the same district court – creates the appearance that Mr. Watkins' sentence was not based upon the facts, but because Mr. Watkins chose to exercise his constitutional right to trial. Furthermore, if general deterrence is needed to prevent future Cuyahoga County corruption, sentences imposed by this same district court in similar cases would so reflect – which they do not. Instead, in every defendant

53

in the two similar cases sentenced to date, the district court varied *downward*, imposing an average sentence of less than 12 months imprisonment.

Therefore, the sentence imposed is greater than necessary to achieve the purpose of general deterrence and is procedurally and substantively unreasonable.

## 2. The district court improperly relied upon unproven allegations of "relevant conduct" and erroneously concluded Mr. Watkins exhibited a history and propensity for this offense.

The district court attempted to justify its upward variance with the erroneous conclusion Mr. Watkins "had committed this type of act in the past and that he was willing to continue to do so well into the future." [R. 72, Sent. Memo, p. 7]. The district court extrapolated from the videotaped meetings that Mr. Watkins' demeanor alone proved an "ongoing relationship with ongoing kickbacks and ongoing bribery." [R. 95, Sent. Tr., pp. 11, 58-61; see also R. 72, Sent. Memo., p.7]. Such speculation is not supported by the evidence, and the district court's conclusion is erroneous.

The district court also speculated that Mr. Watkins may not have put forth full cooperative efforts with the FBI to find other cases of corruption "because he was afraid he might implicate himself in other circumstances." [R. 95, Sent. Tr., p. 60]. Agent Levy testified he met with Mr. Watkins on several occasions regarding the wide-sweeping probe into Cuyahoga County politics. [R. 93, Trial Tr., pp. 383-385]. Mr. Watkins' inability to provide helpful information is due to the fact he was not

entrenched in corruption. [R. 95, Sent. Tr., p. 32]. For the district court to imply Mr. Watkins somehow dodged cooperative efforts to avoid further criminal implications is wholly unsupported by the record and improper.

The district court also erroneously relied upon unproven allegations from 2003. In the government's sentencing memorandum, the government offered allegations from 2003 centering around James Gracey, the representative for Progressive Systems, a contractor. In 2003, Progressive Systems was involved in an unrelated lawsuit, and as former employees of Progressive Systems, Mr. Gracey, Mr. Watkins and a number of different parties were involved. [R. 95, Sent. Tr., p. 31]. The government alleges that on September 18, 2003, Mr. Watkins' asked Mr. Gracey for a payment in connection to a contract between Progressive Systems and CMSD. [R. 95, Sent. Tr., pp. 11-12]. The only documents offered in support of these allegations is a statement given by Mr. Gracey to the FBI on January 11, 2010, and a copy of Mr. Gracey's alleged calendar from September 2003 with the word "Cleveland" written across September 18, 2003. [R. 65-1, Gov. Sent. Memo, pp 1-3]. Despite the tenuous nature of the evidence, the district court relied on the 2003 allegations as "relevant conduct" under § 3553(a), concluding Mr. Watkins engaged in a pattern of such conduct. [R. 95, Sent. Tr., pp. 19, 58-61]. The district court went on to make the unfounded supposition that "perhaps there are others." [R. 95, Sent. Tr., p. 59].

The government failed to prove the 2003 allegations by a preponderance of the evidence. See United States v. Hunt, 487 F.3d 347, 350 (6th Cir. 2007) (A district court's findings of fact at sentencing are subject to a preponderance-of-the-evidence standard). In its sentencing opinion, the district court states there was no ruling as to the preponderance standard. [R. 72, Sent. Memo., p. 7]. Yet earlier, the district court found the 2003 allegations to be proven by a preponderance of the evidence. [R. 95, Sent. Tr., p. 59]. The government did not call Mr. Gracey to testify at sentencing, thus, Mr. Watkins was not able to cross-examine him. Cf. United States v. Stout, 599 F.3d 549, 557-559 (6th Cir. 2010) (finding witness statements relied upon by district court to establish relevant conduct were sufficient because such statements were consistent with trial  testimony of same witnesses and Defendant's post-arrest statement). In addition, no efforts were made by the FBI to corroborate Mr. Gracey's statements, such as interviewing the former supervisor to whom Mr. Gracey allegedly reported the incident. [R. 95, Sent. Tr., pp. 16-17]. The only "evidence" in support of Mr. Gracey's statement is a simple word written on a calendar – a word which could have been written at anytime between 2003 and 2010. This one word, "Cleveland," is insufficient to prove Mr. Gracey's allegations by a preponderance of the evidence.

Therefore, the upward variance imposed is not based on sufficiently compelling evidence and is procedurally and substantively unreasonable.

**3.    The district court erroneously varied upward based upon alleged perjury when such alleged perjury was already used to enhance Mr. Watkins' advisory guideline range by two offense levels.**

As previously raised, there is insufficient evidence Mr. Watkins' testimony was false "concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." <u>Dunnigan</u>, 507 U.S. at 94.  Mr. Watkins incorporates herein his previous argument, set forth above at pp. 41-46, asserting the record does not support a finding a perjury.   In the alternative, should this Court determine there is sufficient evidence of perjury, an upward variance from an already enhanced guideline range for such perjury is procedurally and substantively unreasonable.

**4.    The sentence imposed does not reflect the seriousness of the offense and promotes disrespect for the law.**

The Probation Officer recommended a downward variance "to promote respect for the law." [PSR at ¶75].  An unreasonably harsh sentence promotes disrespect for the law, defeating a central purpose of sentencing.  18 U.S.C. § 3553(a)(2)(A); <u>Gall</u>, 552 U.S. at 54 ("a sentence . . . may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without

taking into account the real conduct and circumstances involved in sentencing"). The six-year sentence is an unduly harsh sentence that promotes disrespect for the law.

The sentence imposed fails to reflect the seriousness of the offense. VSS was awarded the June 2008 fairly. Ms. Newsome testified all contracts between VSS and CMSD were legitimate and performed accordingly. [R. 93, Trial Tr., pp. 296-297]. There are no allegations that VSS should not have been awarded the June 2008 contract, nor are there allegations that VSS failed to adequately perform its duties under this contract. A more serious situation would be if the evidence had shown an unqualified vendor was awarded a contract or if there was evidence of favoritism. Therefore, the upward variance imposed does not reflect the seriousness of the offense and promotes disrespect for the law, resulting in a procedurally and substantively unreasonable sentence. Mr. Watkins asks this Court to vacate his sentence.

## CONCLUSION

The jury pool, entirely Caucasian, did not represent a fair-cross section of the community, in violation of the Sixth Amendment. The jury was not instructed on an essential element of the crime – the only element contested at trial. This same element was misstated by two FBI agents and the prosecution during closing argument, without proper limiting instruction from the district court. Mr. Watkins was punished severely for testifying and presenting a defense, resulting in a procedurally and substantively

unreasonable sentence when compared to similarly situated defendants. The district court failed to adequately justify its upward variance when imposing a six-year sentence, which promotes disrespect for the law and does not reflect the seriousness of the offense. Therefore, Mr. Watkins asks this Court to vacate his convictions and sentences.

Respectfully submitted,

*/s/ Wendi L. Overmyer*
WENDI L. OVERMYER (#0071000)
Attorney at Law
Office of the Federal Public Defender
50 S. Main St., Suite 700
Akron, Ohio 44308
Phone: (330) 375-5739
Fax: (330) 375-5738
e-mail address: wendi_overmyer@fd.org

## <u>CERTIFICATE OF SERVICE & CONFORMITY</u>

1.      I certify that on February 22, 2011, a copy of <u>Appellant Bernard Watkins'</u>
<u>Brief</u> was filed electronically. Notice of this filing will be sent by operation
of the Court's electronic filing system to all parties indicated on the
electronic filing receipt. Parties may access this filing through the Court's
system.

2.      This brief complies with the 14,000 type-volume limitation of Fed. R. App.
P. 32(a)(7)(B) as this brief contains 13,236 words, excluding the parts of the
brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

> */s/ Wendi L. Overmyer*
> WENDI L. OVERMYER (#0071000)
> Attorney for Appellant Watkins

# ADDENDUM OF RELEVANT DOCUMENTS IN RECORD

## N.D. Ohio Case No. 1:09-CR-00490-JRA

| Docket No. | Description |
| --- | --- |
| 1 | Information |
| 19 | Superseding Indictment |
| 41 | Proposed Jury Instructions |
| 47 | Motion for Acquittal |
| 51 | Jury Verdict |
| 63 (under seal) | Sentencing Memorandum by Bernard Watkins |
| 65 | Sentencing Memorandum by United States |
| 71 | Judgment |
| 72 | Sentencing Memorandum Opinion |
| 73 | Notice of Appeal |
| 92 | Transcript of Voir Dire, Vol. 1 |
| 93 | Transcript of Trial, Vol. 2 |
| 94 | Transcript of Trial, Vol. 3 |
| 95 | Transcript of Sentencing Hearing |
| -- | Presentence Investigation Report |